7.    Contribution.

To the extent any indemnification by an indemnifying party is prohibited or limited by law, the indemnifying party agrees to make the maximum contribution with respect to any amounts for which it would otherwise be liable under Section 6 to the fullest extent permitted by law; provided, however, that: (i) no contribution shall be made under circumstances where the maker would not have been liable for indemnification under the fault standards set forth in Section 6 of this Agreement, (ii) no Person involved in the sale of Registrable Securities, which Person is guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the 1933 Act) in connection with such sale, shall be entitled to contribution from any Person involved in such sale of Registrable Securities who was not guilty of fraudulent misrepresentation; and (iii) contribution by any seller of Registrable Securities shall be limited in amount to the net amount of proceeds received by such seller from the sale of such Registrable Securities pursuant to such Registration Statement.

8.    Reports Under the 1934 Act.

With a view to making available to the Investors the benefits of Rule 144 promulgated under the 1933 Act or any other similar rule or regulation of the SEC that may at any time permit the Investors to sell securities of the Company to the public without registration ("**Rule 144**"), the Company agrees to:

a.    make and keep public information available, as those terms are understood and defined in Rule 144;

b.    file with the SEC in a timely manner all reports and other documents required of the Company under the 1933 Act and the 1934 Act so long as the Company remains subject to such requirements and the filing of such reports and other documents is required for the applicable provisions of Rule 144; and

c.    furnish to each Investor so long as such Investor owns Registrable Securities, promptly upon request, (i) a written statement by the Company, if true, that it has complied with the reporting requirements of Rule 144, the 1933 Act and the 1934 Act, (ii) a copy of the most recent annual report of the Company and such other reports and documents so filed by the Company (but only if such reports are not publicly available on the EDGAR system), and (iii) such other information as may be reasonably requested to permit the Investors to sell such securities pursuant to Rule 144 without registration.

9.    Assignment of Registration Rights.

The rights under this Agreement shall be automatically assignable by the Investors to any transferee of all or any portion of such Investor's Registrable Securities if: (i) the Investor agrees in writing with the transferee or assignee to assign such rights, and a copy of such agreement is furnished to the Company within a reasonable time after such assignment; (ii) the Company is, within a reasonable time after such transfer or assignment, furnished with written notice of (a) the name and address of such transferee or assignee, and (b) the securities with respect to which such registration rights are being transferred or assigned; (iii) immediately following such transfer or assignment the further disposition of such securities by the transferee

or assignee is restricted under the 1933 Act or applicable state securities laws; (iv) at or before the time the Company receives the written notice contemplated by clause (ii) of this sentence the transferee or assignee agrees in writing with the Company to be bound by all of the provisions contained herein; and (v) such transfer shall have been made in accordance with the applicable requirements of the Securities Purchase Agreement.

          10.    <u>Amendment of Registration Rights.</u>

Provisions of this Agreement may be amended and the observance thereof may be waived (either generally or in a particular instance and either retroactively or prospectively), only with the written consent of the Company and the holders of at least two-thirds of the Registrable Securities. Any amendment or waiver effected in accordance with this Section 10 shall be binding upon each Investor and the Company. No such amendment shall be effective to the extent that it applies to less than all of the holders of the Registrable Securities. No consideration shall be offered or paid to any Person to amend or consent to a waiver or modification of any provision of any of this Agreement unless the same consideration also is offered to all of the parties to this Agreement.

          11.    <u>Miscellaneous.</u>

          a.    A Person is deemed to be a holder of Registrable Securities whenever such Person owns or is deemed to own of record such Registrable Securities. If the Company receives conflicting instructions, notices or elections from two or more Persons with respect to the same Registrable Securities, the Company shall act upon the basis of instructions, notice or election received from the such record owner of such Registrable Securities.

          b.    Any notices, consents, waivers or other communications required or permitted to be given under the terms of this Agreement must be in writing and will be deemed to have been delivered: (i) upon receipt, when delivered personally; (ii) upon receipt, when sent by facsimile (provided confirmation of transmission is mechanically or electronically generated and kept on file by the sending party); or (iii) one Business Day after deposit with a nationally recognized overnight delivery service, in each case properly addressed to the party to receive the same. The addresses and facsimile numbers for such communications shall be:

If to the Company:

          Earth Biofuels, Inc.
          3001 Knox Street, Suite 403
          Dallas, Texas 75205
          Telephone:    (214) 389-9800
          Facsimile:    (214) 389-9806
          Attention:    Dennis McLaughlin

With a copy to:

Scheef & Stone, LLP
5956 Sherry Lane, Suite 1400
Dallas, Texas 75225
Telephone:    (214) 706-4200
Facsimile:    (214) 706-4242
Attention:    Roger A. Crabb, Esq.

If to Legal Counsel:

Schulte Roth & Zabel LLP
919 Third Avenue
New York, New York 10022
Telephone:    (212) 756-2000
Facsimile:    (212) 593-5955
Attention:    Eleazer N. Klein, Esq.

If to a Buyer, to its address and facsimile number set forth on the Schedule of Buyers attached hereto, with copies to such Buyer's representatives as set forth on the Schedule of Buyers, or to such other address and/or facsimile number and/or to the attention of such other Person as the recipient party has specified by written notice given to each other party five (5) days prior to the effectiveness of such change. Written confirmation of receipt (A) given by the recipient of such notice, consent, waiver or other communication, (B) mechanically or electronically generated by the sender's facsimile machine containing the time, date, recipient facsimile number and an image of the first page of such transmission or (C) provided by a courier or overnight courier service shall be rebuttable evidence of personal service, receipt by facsimile or receipt from a nationally recognized overnight delivery service in accordance with clause (i), (ii) or (iii) above, respectively.

c.      Failure of any party to exercise any right or remedy under this Agreement or otherwise, or delay by a party in exercising such right or remedy, shall not operate as a waiver thereof.

d.      All questions concerning the construction, validity, enforcement and interpretation of this Agreement shall be governed by the internal laws of the State of New York, without giving effect to any choice of law or conflict of law provision or rule (whether of the State of New York or any other jurisdictions) that would cause the application of the laws of any jurisdictions other than the State of New York. Each party hereby irrevocably submits to the exclusive jurisdiction of the state and federal courts sitting in The City of New York, Borough of Manhattan, for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein, and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, that such suit, action or proceeding is brought in an inconvenient forum or that the venue of such suit, action or proceeding is improper. Each party hereby irrevocably waives personal service of process and consents to process being served in any such suit, action or proceeding by mailing a copy thereof to such party at the address for such notices to it under this Agreement and agrees that such service shall constitute good and sufficient

service of process and notice thereof. Nothing contained herein shall be deemed to limit in any way any right to serve process in any manner permitted by law. If any provision of this Agreement shall be invalid or unenforceable in any jurisdiction, such invalidity or unenforceability shall not affect the validity or enforceability of the remainder of this Agreement in that jurisdiction or the validity or enforceability of any provision of this Agreement in any other jurisdiction. **EACH PARTY HEREBY IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE, AND AGREES NOT TO REQUEST, A JURY TRIAL FOR THE ADJUDICATION OF ANY DISPUTE HEREUNDER OR IN CONNECTION HEREWITH OR ARISING OUT OF THIS AGREEMENT OR ANY TRANSACTION CONTEMPLATED HEREBY.**

e. This Agreement, the other Transaction Documents (as defined in the Securities Purchase Agreement) and the instruments referenced herein and therein constitute the entire agreement among the parties hereto with respect to the subject matter hereof and thereof. There are no restrictions, promises, warranties or undertakings, other than those set forth or referred to herein and therein. This Agreement, the other Transaction Documents and the instruments referenced herein and therein supersede all prior agreements and understandings among the parties hereto with respect to the subject matter hereof and thereof.

f. Subject to the requirements of Section 9, this Agreement shall inure to the benefit of and be binding upon the permitted successors and assigns of each of the parties hereto.

g. The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the meaning hereof.

h. This Agreement may be executed in identical counterparts, each of which shall be deemed an original but all of which shall constitute one and the same agreement. This Agreement, once executed by a party, may be delivered to the other party hereto by facsimile transmission of a copy of this Agreement bearing the signature of the party so delivering this Agreement.

i. Each party shall do and perform, or cause to be done and performed, all such further acts and things, and shall execute and deliver all such other agreements, certificates, instruments and documents, as any other party may reasonably request in order to carry out the intent and accomplish the purposes of this Agreement and the consummation of the transactions contemplated hereby.

j. All consents and other determinations required to be made by the Investors pursuant to this Agreement shall be made, unless otherwise specified in this Agreement, by the Required Holders.

k. The language used in this Agreement will be deemed to be the language chosen by the parties to express their mutual intent and no rules of strict construction will be applied against any party.

l.      This Agreement is intended for the benefit of the parties hereto and their respective permitted successors and assigns, and is not for the benefit of, nor may any provision hereof be enforced by, any other Person.

m.      The obligations of each Buyer hereunder are several and not joint with the obligations of any other Buyer, and no provision of this Agreement is intended to confer any obligations on any Buyer vis-à-vis any other Buyer.  Nothing contained herein, and no action taken by any Buyer pursuant hereto, shall be deemed to constitute the Buyers as a partnership, an association, a joint venture or any other kind of entity, or create a presumption that the Buyers are in any way acting in concert or as a group with respect to such obligations or the transactions contemplated herein.

[Signature Page Follows]

**IN WITNESS WHEREOF,** each Buyer and the Company have caused their respective signature page to this Registration Rights Agreement to be duly executed as of the date first written above.

COMPANY:

**EARTH BIOFUELS, INC.**

By: _____

     Name:  Dennis G. McLaughlin, III
     Title:    Chief Executive Officer

**IN WITNESS WHEREOF,** each Buyer and the Company have caused their respective signature page to this Registration Rights Agreement to be duly executed as of the date first written above.

**BUYERS:**

**CASTLERIGG MASTER INVESTMENTS LTD.**

By: _____
      Name:
      Title:

**IN WITNESS WHEREOF,** each Buyer and the Company have caused their respective signature page to this Registration Rights Agreement to be duly executed as of the date first written above.

**EVOLUTION MASTER FUND LTD. SPC,**
**SEGREGATED PORTFOLIO M**


By:    _____
          Name:
          Title:

**IN WITNESS WHEREOF,** each Buyer and the Company have caused their respective signature page to this Registration Rights Agreement to be duly executed as of the date first written above.

**RADCLIFFE SPC, LTD. FOR AND ON BEHALF OF THE CLASS A CONVERTIBLE CROSSOVER SEGREGATED PORTFOLIO**
**By: RG Capital Management, L.P.**
**By: RGC Management Company, LLC**

By: _____
      Name:
      Title:

**IN WITNESS WHEREOF,** each Buyer and the Company have caused their respective signature page to this Registration Rights Agreement to be duly executed as of the date first written above.

**CAPITAL VENTURES INTERNATIONAL**
By: Heights Capital Management, Inc.


By:  _____
        Name:
        Title:

**IN WITNESS WHEREOF**, each Buyer and the Company have caused their respective signature page to this Registration Rights Agreement to be duly executed as of the date first written above.

**Portside Growth and Opportunity Fund**

By: _____

Name:

Title:          **Jeffrey C. Smith**
                **Authorized Signatory**

**IN WITNESS WHEREOF,** each Buyer and the Company have caused their respective signature page to this Registration Rights Agreement to be duly executed as of the date first written above.


**CORNELL CAPITAL PARTNERS, LP**
**BY:**      **YORKVILLE ADVISORS, LLC**
**ITS:**      **GENERAL PARTNER**


By:    _____
          Name: Mark Angelo
          Title:   Portfolio Manager

**IN WITNESS WHEREOF,** each Buyer and the Company have caused their respective signature page to this Registration Rights Agreement to be duly executed as of the date first written above.

**CRANSHIRE CAPITAL L.P.**

By: _____
      Name:
      Title:

**IN WITNESS WHEREOF,** each Buyer and the Company have caused their respective signature page to this Registration Rights Agreement to be duly executed as of the date first written above.

**KINGS ROAD INVESTMENTS LTD.**

By: _____

    Name:

    Title:

## SCHEDULE OF BUYERS

| Buyer | Buyer's Address and Facsimile Number | Buyer's Representative's Address and Facsimile Number |
|---|---|---|
| **Castlerigg Master Investments Ltd** | c/o Sandell Asset Management Corp.<br>40 West 57th Street<br>26th Floor<br>New York, New York 10019<br>Attention: Cem Hacioglu/Matthew Pliskin<br>Facsimile:    (212) 603-5710<br>Telephone:    (212) 603-5775 | Schulte Roth & Zabel LLP<br>919 Third Avenue<br>New York, New York 10022<br>Attn: Eleazer Klein, Esq.<br>Facsimile: (212) 593-5955<br>Telephone: (212) 756-2000 |
| **Evolution Master Fund Ltd. SPC, Segregated Portfolio M** | c/o Evolution Capital Management LLC<br>Walker House, Mary Street<br>P.O. Box 908 GT<br>George Town, Cayman Island<br>Attn: Richard Chisholm<br>Facsimile: 808-441-4946<br>Telephone: 808-441-4917<br>Residence: Cayman Islands<br><br>Additional Copy to:<br><br>Evolution Capital Management, LLC<br>1132 Bishop Street,<br>Suite 1880<br>Honolulu, Hawaii 96813<br>Attention: Richard Chisholm<br>Facsimile: 808-441-4946<br>Telephone: 808-441-4917 | |
| **Radcliffe SPC, Ltd. For and on behalf of the Class A Convertible Crossover Segregated Portfolio** | c/o RG Capital Management, LP<br>3 Bala Plaza-East, Suite 501<br>Bala Cynwyd, PA 19004<br>Attention: Gerald F. Stahlecker<br>Facsimile: (610) 617-0570<br>Telephone: (610) 617-5911<br>Residence: Cayman Islands | |
| **Capital Ventures International** | c/o Heights Capital Management<br>101 California Street, Suite 3250<br>San Francisco, CA 94111<br>Attention: Martin Kobinger,<br>Investment Manager<br>Facsimile: 415-403-6525<br>Telephone: 415-403-6500<br>Residence: Cayman Islands | |
| **Portside Growth and Opportunity Fund** | c/o Ramius Capital Group, L.L.C.<br>666 Third Avenue,<br>26th Floor<br>New York, New York 10017<br>Attention: Jeffrey Smith<br>              Michael Neidell<br>Facsimile:   (212) 845-7999<br>Telephone:   (212) 845-7955<br>Residence:  Cayman Islands | |

**Cornell Capital Partners, LP**

101 Hudson Street
Suite 3700
Jersey City, NJ 07303
Attention: Mark Angelo
Facsimile: (201) 985-8266
Telephone: (201) 985-8300
Residence: Delaware

Troy Rillo, Esq.
101 Hudson Street – Suite 3700
Jersey City, NJ 07302
Facsimile: (201) 985-8266

**Cranshire Capital L.P.**

c/o Downsview Capital, Inc.
The General Partner
666 Dundee Road,
Suite 1901
Northbrook, IL 60062
Attention: Mitchell D. Kopin
Facsimile: (847) 562-9031
Telephone: (847) 562-9030
Residence: Illinois

**Kings Road
Investments Ltd.**

c/o Polygon Investment Partners LP
598 Madison Avenue
14th Floor
New York, NY 10022
Attention: Erik M.W. Caspersen
                   Brandon L. Jones
Facsimile: (212) 359-7303
Telephone: (212) 359-7300
Residence: Cayman Islands

**EXHIBIT A**

## FORM OF NOTICE OF EFFECTIVENESS
## OF REGISTRATION STATEMENT

[Transfer Agent]
[Address]
Attention:

Re: EARTH BIOFUELS, INC..

Ladies and Gentlemen:

     [We are][I am] counsel to Earth Biofuels, Inc., a Delaware corporation (the **"Company"**), and have represented the Company in connection with that certain Securities Purchase Agreement (the **"Securities Purchase Agreement"**) entered into by and among the Company and the buyers named therein (collectively, the **"Holders"**) pursuant to which the Company issued to the Holders senior convertible notes (the **"Notes"**) convertible into the Company's common stock, $0.001 par value per share (the **"Common Stock"**) and warrants exercisable for shares of Common Stock (the **"Warrants"**). Pursuant to the Securities Purchase Agreement, the Company also has entered into a Registration Rights Agreement with the Holders (the **"Registration Rights Agreement"**) pursuant to which the Company agreed, among other things, to register the Registrable Securities (as defined in the Registration Rights Agreement), including the shares of Common Stock issuable upon conversion of the Notes and the shares of Common Stock issuable upon exercise of the Warrants, under the Securities Act of 1933, as amended (the **"1933 Act"**). In connection with the Company's obligations under the Registration Rights Agreement, on _____ ___, 200_, the Company filed a Registration Statement on Form S-3 (File No. 333-_____) (the **"Registration Statement"**) with the Securities and Exchange Commission (the **"SEC"**) relating to the Registrable Securities which names each of the Holders as a selling stockholder thereunder.

     In connection with the foregoing, [we][I] advise you that a member of the SEC's staff has advised [us][me] by telephone that the SEC has entered an order declaring the Registration Statement effective under the 1933 Act at [ENTER TIME OF EFFECTIVENESS] on [ENTER DATE OF EFFECTIVENESS] and [we][I] have no knowledge, after telephonic inquiry of a member of the SEC's staff, that any stop order suspending its effectiveness has been issued or that any proceedings for that purpose are pending before, or threatened by, the SEC and the Registrable Securities are available for resale under the 1933 Act pursuant to the Registration Statement.

     This letter shall serve as our standing opinion to you that the shares of Common Stock are freely transferable by the Holders pursuant to the Registration Statement. You need not require further letters from us to effect any future legend-free issuance or reissuance of

10164752.8

shares of Common Stock to the Holders as contemplated by the Company's Irrevocable Transfer Agent Instructions dated July __, 2006.

Very truly yours,

[ISSUER'S COUNSEL]

By:_____

CC:    **[LIST NAMES OF HOLDERS]**

**EXHIBIT B**

## SELLING STOCKHOLDERS

The shares of Common Stock being offered by the selling stockholders are issuable upon conversion of the convertible notes and upon exercise of the warrants. For additional information regarding the issuance of those convertible notes and warrants, see "Private Placement of Convertible Notes and Warrants" above. We are registering the shares of Common Stock in order to permit the selling stockholders to offer the shares for resale from time to time. Except for the ownership of the Convertible Notes and the Warrants issued pursuant to the Securities Purchase Agreement, the selling stockholders have not had any material relationship with us within the past three years.

The table below lists the selling stockholders and other information regarding the beneficial ownership of the shares of Common Stock by each of the selling stockholders. The second column lists the number of shares of Common Stock beneficially owned by each selling stockholder, based on its ownership of the convertible notes and warrants, as of _____, 200_, assuming conversion of all convertible notes and exercise of the warrants held by the selling stockholders on that date, without regard to any limitations on conversions or exercise.

The third column lists the shares of Common Stock being offered by this prospectus by the selling stockholders.

In accordance with the terms of a registration rights agreement with the selling stockholders, this prospectus generally covers the resale of at least 130% of the sum of (i) the number of shares of Common Stock issuable upon conversion of the convertible notes as of the trading day immediately preceding the date the registration statement is initially filed with the SEC and (ii) the number of shares of Common Stock issuable upon exercise of the related warrants as of the trading day immediately preceding the date the registration statement is initially filed with the SEC. Because the conversion price of the convertible notes and the exercise price of the warrants may be adjusted, the number of shares that will actually be issued may be more or less than the number of shares being offered by this prospectus. The fourth column assumes the sale of all of the shares offered by the selling stockholders pursuant to this prospectus.

Under the terms of the convertible notes and the warrants, a selling stockholder may not convert the convertible notes or exercise the warrants to the extent such conversion or exercise would cause such selling stockholder, together with its affiliates, to beneficially own a number of shares of Common Stock which would exceed 4.99% of our then outstanding shares of Common Stock following such conversion or exercise, excluding for purposes of such determination shares of Common Stock issuable upon conversion of the convertible notes which have not been converted and upon exercise of the warrants which have not been exercised. The number of shares in the second column does not reflect this limitation. The selling stockholders may sell all, some or none of their shares in this offering. See "Plan of Distribution."

| Name of Selling Stockholder | Number of Shares Owned Prior to Offering | Maximum Number of Shares to be Sold Pursuant to this Prospectus | Number of Shares Owned After Offering |
|---|---|---|---|
| **Castlerigg Master Investments (1)** | | | 0 |
| **Evolution Master Fund Ltd. SPC, Segregated Portfolio M** | | | |
| **Radcliffe SPC, Ltd. For and on behalf of the Class A Convertible Crossover Segregated Portfolio** | | | |
| **Capital Ventures International** | | | |
| **Portside Growth and Opportunity Fund** | | | |
| **Cornell Capital Partners, LP** | | | |
| **Cranshire Capital L.P.** | | | |
| **Kings Road Investments Ltd.** | | | |

(1)    Sandell Asset Management Corp. is the investment manager of Castlerigg Master Investment Ltd. ("Castlerigg") and has shared voting and dispositive power over the securities owned by Castlerigg. Sandell Asset Management Corp. and Thomas E. Sandell, its sole shareholder, disclaim beneficial ownership of the securities owned by Castlerigg.

## PLAN OF DISTRIBUTION

We are registering the shares of Common Stock issuable upon conversion of the convertible notes and upon exercise of the warrants to permit the resale of these shares of Common Stock by the holders of the convertible notes and warrants from time to time after the date of this prospectus. We will not receive any of the proceeds from the sale by the selling stockholders of the shares of Common Stock. We will bear all fees and expenses incident to our obligation to register the shares of Common Stock.

The selling stockholders may sell all or a portion of the shares of Common Stock beneficially owned by them and offered hereby from time to time directly or through one or more underwriters, broker-dealers or agents. If the shares of Common Stock are sold through underwriters or broker-dealers, the selling stockholders will be responsible for underwriting discounts or commissions or agent's commissions. The shares of Common Stock may be sold in one or more transactions at fixed prices, at prevailing market prices at the time of the sale, at varying prices determined at the time of sale, or at negotiated prices. These sales may be effected in transactions, which may involve crosses or block transactions,

- on any national securities exchange or quotation service on which the securities may be listed or quoted at the time of sale;

- in the over-the-counter market;

- in transactions otherwise than on these exchanges or systems or in the over-the-counter market;

- through the writing of options, whether such options are listed on an options exchange or otherwise;

- ordinary brokerage transactions and transactions in which the broker-dealer solicits purchasers;

- block trades in which the broker-dealer will attempt to sell the shares as agent but may position and resell a portion of the block as principal to facilitate the transaction;

- purchases by a broker-dealer as principal and resale by the broker-dealer for its account;

- an exchange distribution in accordance with the rules of the applicable exchange;

- privately negotiated transactions;

- to cover short sales made after the date this Registration Statement is declared effective by the SEC;

- sales pursuant to Rule 144;

- broker-dealers may agree with the selling securityholders to sell a specified number of such shares at a stipulated price per share;

- a combination of any such methods of sale; and

- any other method permitted pursuant to applicable law.

If the selling stockholders effect such transactions by selling shares of Common Stock to or through underwriters, broker-dealers or agents, such underwriters, broker-dealers or agents may receive commissions in the form of discounts, concessions or commissions from the selling stockholders or commissions from purchasers of the shares of Common Stock for whom they may act as agent or to whom they may sell as principal (which discounts, concessions or commissions as to particular underwriters, broker-dealers or agents may be in excess of those customary in the types of transactions involved). In connection with sales of the shares of Common Stock or otherwise, the selling stockholders may enter into hedging transactions with broker-dealers, which may in turn engage in short sales of the shares of Common Stock in the course of hedging in positions they assume. The selling stockholders may also sell shares of Common Stock short and deliver shares of Common Stock covered by this prospectus to close out short positions and to return borrowed shares in connection with such short sales. The selling stockholders may also loan or pledge shares of Common Stock to broker-dealers that in turn may sell such shares.

The selling stockholders may pledge or grant a security interest in some or all of the convertible notes, warrants or shares of Common Stock owned by them and, if they default in the performance of their secured obligations, the pledgees or secured parties may offer and sell the shares of Common Stock from time to time pursuant to this prospectus or any amendment to this prospectus under Rule 424(b)(3) or other applicable provision of the Securities Act of 1933, as amended, amending, if necessary, the list of selling stockholders to include the pledgee, transferee or other successors in interest as selling stockholders under this prospectus. The selling stockholders also may transfer and donate the shares of Common Stock in other circumstances in which case the transferees, donees, pledgees or other successors in interest will be the selling beneficial owners for purposes of this prospectus.

The selling stockholders and any broker-dealer participating in the distribution of the shares of Common Stock may be deemed to be "underwriters" within the meaning of the Securities Act, and any commission paid, or any discounts or concessions allowed to, any such broker-dealer may be deemed to be underwriting commissions or discounts under the Securities Act. At the time a particular offering of the shares of Common Stock is made, a prospectus supplement, if required, will be distributed which will set forth the aggregate amount of shares of Common Stock being offered and the terms of the offering, including the name or names of any broker-dealers or agents, any discounts, commissions and other terms constituting compensation from the selling stockholders and any discounts, commissions or concessions allowed or reallowed or paid to broker-dealers.

Under the securities laws of some states, the shares of Common Stock may be sold in such states only through registered or licensed brokers or dealers. In addition, in some states the shares of Common Stock may not be sold unless such shares have been registered or qualified

for sale in such state or an exemption from registration or qualification is available and is complied with.

There can be no assurance that any selling stockholder will sell any or all of the shares of Common Stock registered pursuant to the shelf registration statement, of which this prospectus forms a part.

The selling stockholders and any other person participating in such distribution will be subject to applicable provisions of the Securities Exchange Act of 1934, as amended, and the rules and regulations thereunder, including, without limitation, Regulation M of the Exchange Act, which may limit the timing of purchases and sales of any of the shares of Common Stock by the selling stockholders and any other participating person. Regulation M may also restrict the ability of any person engaged in the distribution of the shares of Common Stock to engage in market-making activities with respect to the shares of Common Stock. All of the foregoing may affect the marketability of the shares of Common Stock and the ability of any person or entity to engage in market-making activities with respect to the shares of Common Stock.

We will pay all expenses of the registration of the shares of Common Stock pursuant to the registration rights agreement, estimated to be $[    ] in total, including, without limitation, Securities and Exchange Commission filing fees and expenses of compliance with state securities or "blue sky" laws; provided, however, that a selling stockholder will pay all underwriting discounts and selling commissions, if any. We will indemnify the selling stockholders against liabilities, including some liabilities under the Securities Act, in accordance with the registration rights agreements, or the selling stockholders will be entitled to contribution. We may be indemnified by the selling stockholders against civil liabilities, including liabilities under the Securities Act, that may arise from any written information furnished to us by the selling stockholder specifically for use in this prospectus, in accordance with the related registration rights agreement, or we may be entitled to contribution.

Once sold under the shelf registration statement, of which this prospectus forms a part, the shares of Common Stock will be freely tradable in the hands of persons other than our affiliates.

**EXHIBIT C**

## SELLING STOCKHOLDER QUESTIONNAIRE

   The undersigned hereby provides the following information to the Company and represents and warrants that such information is accurate:

1.  **Name.**

    (a)  Full Legal Name of Selling Securityholder

     _____

    (b)  Full Legal Name of Registered Holder (if not the same as (a) above) through which Registrable Securities Listed in Item 3 below are held:

     _____

    (c)  Full Legal Name of Natural Control Person (which means a natural person who directly or indirectly alone or with others has power to vote or dispose of the securities covered by the questionnaire):

     _____

2. **Address for Notices to Selling Securityholder:**

_____
_____
_____

Telephone:_____
Fax:_____
Contact Person:_____

3. **Beneficial Ownership of Registrable Securities:**

    Type and Principal Amount of Registrable Securities beneficially owned:

    _____
    _____
    _____

4. **Broker-Dealer Status:**

10164752.8

(a)    Are you a broker-dealer?

Yes  ☐        No  ☐

Note:  If yes, the SEC's staff has indicated that you should be identified as an underwriter in the Registration Statement.

(b)    Are you an affiliate of a broker-dealer?

Yes  ☐        No  ☐

(c)    If you are an affiliate of a broker-dealer, do you certify that you bought the Registrable Securities in the ordinary course of business, and at the time of the purchase of the Registrable Securities to be resold, you had no agreements or understandings, directly or indirectly, with any person to distribute the Registrable Securities?

Yes  ☐        No  ☐

Note:  If no, the SEC's staff has indicated that you should be identified as an underwriter in the Registration Statement.

## 5.  Beneficial Ownership of Other Securities of the Company Owned by the Selling Securityholder.

*Except as set forth below in this Item 5, the undersigned is not the beneficial or registered owner of any securities of the Company other than the Registrable Securities listed above in Item 3.*

Type and Amount of Other Securities beneficially owned by the Selling Securityholder:

_____

_____

## 6.  Relationships with the Company:

*Except as set forth below, neither the undersigned nor any of its affiliates, officers, directors or principal equity holders (owners of 5% of more of the equity securities of the undersigned) has held any position or office or has had any other material relationship with the Company (or its predecessors or affiliates) during the past three years.*

State any exceptions here:

_____

_____

The undersigned agrees to promptly notify the Company of any inaccuracies or changes in the information provided herein that may occur subsequent to the date hereof and prior to the Effective Date for the Registration Statement.

By signing below, the undersigned consents to the disclosure of the information contained herein in its answers to Items 1 through 6 and the inclusion of such information in the Registration Statement and the related prospectus.  The undersigned understands that such information will be relied upon by the Company in connection with the preparation or amendment of the Registration Statement and the related prospectus.

IN WITNESS WHEREOF the undersigned, by authority duly given, has caused this Questionnaire to be executed and delivered either in person or by its duly authorized agent.

Dated: _____          Beneficial Owner: _____

                                         By:_____
                                               Name:
                                               Title:

**PLEASE FAX A COPY OF THE COMPLETED AND EXECUTED NOTICE AND QUESTIONNAIRE, AND RETURN THE ORIGINAL BY OVERNIGHT MAIL, TO:**

[    ]