# EXHIBIT C

**PORTSIDE GROWTH AND OPPORTUNITY FUND**

September 8, 2006

**VIA FACSIMILE**
**AND OVERNIGHT COURIER**

Earth Biofuels, Inc.
3001 Knox Street, Suite 403
Dallas, Texas
Facsimile: (214) 389-9800
Attention: Dennis McLaughlin

**Re: Event of Default Notice and Event of Default Redemption Notice**

Ladies and Gentlemen:

Reference is hereby made to (i) the Earth Biofuels, Inc. (the "Company") Senior Convertible Note issued July 24, 2006 to Portside Growth and Opportunity Fund ("Portside") in the principal amount of $2,000,000 (the "Note") pursuant to the Securities Purchase Agreement, dated as of July 24, 2006 (the "Securities Purchase Agreement"), by and among the Company, Portside, as a buyer, and the other buyers named therein, (ii) the Registration Rights Agreement, dated as of July 24, 2006 (the "Registration Rights Agreement"), by and among the Company, Portside, as a buyer, and the other buyers listed on the signature pages thereto and (iii) the Schedule 13D, dated as of July 20, 2006 and filed by Greenwich Power II, L.L.C. ("Greenwich Power II"), Greenwich Power, L.L.C. ("Greenwich Power") and Lance A. Bakrow ("Mr. Bakrow", and together with Greenwich Power II and Greenwich Power, the "Greenwich Power Parties") on August 4, 2006 (the "Greenwich Power 13D"). Capitalized terms used but not defined herein have the meanings given to those terms in the Securities Purchase Agreement.

In the Greenwich Power 13D, the Greenwich Power Parties reported that on July 20, 2006:

- Greenwich Power II purchased from Apollo Resources International, Inc., a Delaware corporation and the parent of the Company ("Apollo"), (i) $8,000,000 principal amount of Exchangeable Notes due May 31, 2011 (the "Apollo Notes"), which Apollo Notes are exchangeable at any time prior to maturity at the option of the holder for shares of common stock, par value $.001 per share ("Common Stock"), of the Company presently owned by Apollo at an exchange price of

$: .00 per share, subject to certain adjustments and (ii) a presently exercisable and in the-money option ("Apollo Option") expiring May 31, 2011 to purchase from A ›ollo shares of Common Stock of the Company owned of record by Apollo at ar exercise price equal to the lesser of (i) $1.50 per share or (ii) 80% of the av erage of the last reported sales prices of the Common Stock on each trading day dt ring the 30 consecutive calendar days immediately preceding the effective date of exercise with respect to 8,000,000 shares of Common Stock;

- G eenwich Power acquired $1,000,000 principal amount of Apollo Notes and an A ›ollo Option with respect to 1,000,000 shares of Common Stock by exchanging a ›ridge loan in the face amount of $1,000,000 issued by the Company;
- M :. Bakrow purchased a warrant from the Company entitling Mr. Bakrow to pı rchase 4,000,000 shares of Common Stock from the Company at an exercise pı ce of $0.25 per share.

The t ansactions described above are referred to collectively as the "Greenwich Powe Transactions".

The Gree ıwich Power 13D also reported that each of Greenwich Power II and Greenwi h Power is a party to registration rights agreements with Apollo dated July 20, 2006 pur uant to which Apollo has agreed to cause the Company to file with the SEC one or more r egistration statements relating to the shares of Common Stock issuable upon exercise f and/or exchange of the securities held by each of Greenwich Power II and Greenwi h Power to which the Greenwich Power 13D relates and that the Company has agreed tc comply with the said registration rights agreements. In addition, the Greenwich Power 1: D discloses that Mr. Bakrow is a party to a registration rights agreement with the Com any dated July 20, 2006 pursuant to which the Company has agreed to file with the SEC ›ne or more registration statements relating to the shares of Common Stock issuable ıpon exercise of Mr. Bakrow's warrant.

The Con pany executed the Securities Purchase Agreement relating to the sale of the Note to I ortside on July 24, 2006 and did not disclose to Portside the fact that the Greenwi h Power Transactions had taken place on July 20, 2006. This constituted a failure tc disclose information material to Portside in making its investment decision as the conv rsion price under the Notes was set at $2.90, substantially higher than the $1.00 exchang price set forth in the Apollo Note. Apollo is the controlling stockholder of the Compan with substantial overlap in the management of Apollo and the Company. The Compan was surely aware of the Greenwich Power Transactions at the time Portside acquired its Note from the Company and the Company's failure to disclose these transacti ›ns to Portside has significantly harmed Portside and constituted a material breach o certain representations, warranties and covenants set forth in the Securities Purchase Agreement and Registration Rights Agreement as described below.

**Event oı Default under Note**

Under S ction 4(a)(x) of the Note, the following constitutes an "Event of Default":

**PORTSIDE GROWTH AND OPPORTUNITY FUND**

> the Company breaches any representation, warranty, covenant or other term or condition of any Transaction Document, which breach has or is likely to have a cost or adverse impact on the Company or the Holders (including by reduction in the value of the shares of Common Stock deliverable in connection with the Transaction Documents) in excess of $250,000, except, in the case of a breach of a covenant or other term or condition of any Transaction Document which is curable, only if such breach continues for a period of at least ten (10) consecutive Business Days.

In Section 3(r) of the Securities Purchase Agreement, the Company represented that:

> Except as disclosed in Schedule 3(r):...(ii) there are no outstanding options, warrants, scrip, rights to subscribe to, calls or commitments of any character whatsoever relating to, or securities or rights convertible into, or exercisable or exchangeable for, any capital stock of the Company or any of its Subsidiaries, or contracts, commitments, understandings or arrangements by which the Company or any of its Subsidiaries is or may become bound to issue additional capital stock of the Company or any of its Subsidiaries or options, warrants, scrip, rights to subscribe to, calls or commitments of any character whatsoever relating to, or securities or rights convertible into, or exercisable or exchangeable for, any capital stock of the Company or any of its Subsidiaries; ...(v) there are no agreements or arrangements under which the Company or any of its Subsidiaries is obligated to register the sale of any of their securities under the 1933 Act (except pursuant to the Registration Rights Agreement)...

The Company did not disclose the Greenwich Power Transactions in Schedule 3(r) to the Securities Purchase Agreement and did not disclose the agreements to register the securities issued to the Greenwich Power Parties described in the Greenwich Power 13D, both of which constitute breaches of the representations described in Section 3(r) of the Securities Purchase Agreement.

In addition, in Section 3(kk) of the Securities Purchase Agreement, the Company represented that:

> ...No event or circumstance has occurred or information exists with respect to the Company or any of its Subsidiaries or its or their business, properties, prospects, operations or financial conditions, which, under applicable law, rule or regulation, requires public disclosure or announcement by the Company but which has not been so publicly announced or disclosed.

The failure of the Company to disclose the Greenwich Power Transactions was a material omission which should have been disclosed to Portside and therefore represents a breach of the foregoing representation.

Further, Section 2(b) of the Registration Rights Agreement provides that:

> Ot ier than as set forth in Schedule 2(b), in no event shall the Company include an / securities other than Registrable Securities on any Registration Statement w: hout the prior written consent of the Required Holders

The agree nent of the Company to register the shares of Common Stock issuable upon exercise a id/or exchange of the securities held by each of the Greenwich Power Parties constitute s a breach of the foregoing covenant.

Had the C ompany disclosed to Portside the Greenwich Power Transactions, Portside would ha e never agreed to a $2.90 conversion price for its Note and would have insisted on a $1.0 ) conversion price – the exchange price used in the Apollo Notes. Consequ ntly, the harm to Portside is significant and well in excess of $250,000.

Accordin gly, Portside is hereby delivering this written Event of Default Notice to the Compan , as required by Section 4(b) of the Note, to provide notice to the Company that an Event of Default has occurred. Pursuant to Section 2 of the Note, from and after this Event of Default (which occurred July 24, 2006), the Interest Rate (as defined in the Note) wa s increased to fifteen percent (15%). As a result, the interest on the Note has been acc uing at a rate of 15% from July 24, 2006.

Event of Default Redemption Notice

Portside s hereby delivering this written Event of Default Redemption Notice (as defined in the N ote) to the Company, as permitted under Section 4(b) of the Note, to provide notice to the Company that Portside is hereby requiring the Company to redeem all of the Note at t he Event of Default Redemption Price (as defined in the Note).

The Eve it of Default Redemption Price shall be calculated in accordance with Section 4(b)(i) o the Note, and shall be the greater of (i) product of the sum of the Conversion Amount (as defined in the Note) to be redeemed together with accrued and unpaid Interest as defined in the Note) with respect to such Conversion Amount and accrued and unp id Late Charges (as defined in the Note) being redeemed and a Redemption Premiun of 120% and (ii) the product of the Conversion Rate (as defined in the Note) with res ect to the Conversion Amount together with accrued and unpaid Interest with respect o such Conversion Amount being redeemed and accrued and unpaid Late Charges with respect to such Conversion Amount and Interest in effect at such time as the Hol er delivers an Event of Default Redemption Notice and the product of (1) the Equity alue Redemption Premium (115%) and (2) the greater of (x) the Closing Sale Price of the Common Stock on the date immediately after such Event of Default, (y) the Closing Sale Price of the Common Stock on the date immediately after such Event of Default and (z) the Closing Sale Price of the Common Stock on the date the Holder delivers the Event of Default Redemption Notice.

As of he date hereof, the Conversion Amount includes $2,000,000 in respect of outstand ing principal balance on the Note plus any and all accrued and unpaid interest

 **POR1 SIDE GROWTH AND OPPORTUNITY FUND**

and late cl arges which have accrued to date. For the avoidance of doubt, the Conversion Amount s all include, as of the date of actual payment by the Company, any additional unpaid int rest and late charges which have accrued from the date hereof through such actual pay nent date.

As of the date hereof, the applicable Event of Default Redemption Price is $2,446,000.00.

***The Con pany is hereby instructed to immediately wire the Event of Default Redempti n Price to the bank account set forth in Schedule 1 to this letter.***

We hereb reserve all rights available to us under the Note, the Securities Purchase Agreemer t, the Registration Rights Agreement and any other document entered into in connectio with the foregoing.

Sincerely

PORTSII E GROWTH AND OPPORTUNITY FUND

By:________________________________
Je frey C. Smith
A thorized Signatory

cc : R ger A. Crabb, Esq., Scheef & Stone, LLP (fax – (214) 706-4242)

 PORT SIDE GROWTH AND OPPORTUNITY FUND

Schedule I

**Bank Account for payment of Event of Default Redemption Price**

JP Morgar Chase
1 Chase M anhattan Plaza
New York NY 10081
ABA #: 0: 1-000-021
FBO Citig oup Global Markets Inc. Prime Brokerage
Account # 066-645-646
FFC: Port ide Growth & Opportunity Fund
A/C # 52: -39607-2-4